Good morning. May it please the Court. Becky Walker-James for the petitioner Jerry Ray Parrish. This case presents the issue of whether Mr. Parrish's sentence of 100 years to life is grossly disproportionate in violation of the Eighth Amendment, where it resulted from a minor domestic violence offense, the circumstances of which were highly ambiguous, and his prior convictions that rendered him a three-striker occurred over 20 years ago and were small-scale robberies. I'd like to begin by addressing the merits of the gross disproportionality issue, and then turn to the procedural default issue that the Court raised in the certificate of appealability as well. And I'd like to reserve about three minutes for rebuttal, if I may. Certainly. First of all, under the AEDPA standard, the California Court of Appeals' decision was, in this case, contrary to clearly established Federal law. The U.S. Supreme Court has expressly held that it is clearly established that the gross disproportionality principle governs Eighth Amendment analysis in cases involving sentences of terms of years. You know, I wonder if it's me. Maybe the mic's on a little bit too loud. Huh? I did lower it a little bit. Okay. Yes, I noticed that, too. Hopefully it'll get better. The California Court of Appeals, however, did not even recognize or mention the gross disproportionality principle in its opinion. Instead, the Court focused on the Supreme Court's holding and viewing that three strikes is not categorically unconstitutional because it can be justified by the State's interest in public safety. And then the Court went on to cite the concurring opinions of Justice Scalia and Thomas that the Eighth Amendment simply is not a guarantee of proportionality. But what the California Court of Appeals did not recognize was that the opinions of the seven other justices on the Supreme Court were to the contrary and are to the contrary, and that the Eighth Amendment does, in fact, include the gross disproportionality principle. Just before I go on with my questions, I'll pause here and say that Justice Kennedy's prior convictions were what? His prior convictions were armed robbery. They were, I think, 70 degree armed robbery. In 1985. I think it was called robbery with the use of a firearm. Right. Where I come from that's called armed robbery. Right. And the other one was robbery causing great bodily harm? I don't know off the top of my head what they called it, but yes. That was in 1989? Yes. Did I accurately characterize what the 89 conviction was? If it's different, please tell me. No, I think that's correct. As I recall, the factual situation, to the extent that it's clear from the record, and there's very little information in the record about the prior offenses, but one of them involved a McDonald's drive-through, and one of the participants did have a gun in that one, and the other one the victim was beaten and robbed. So there was violence involved. There's no question about that. But the offenses were very long in the past when Mr. Parrish was a very young man. Like I said, the circumstances of the offenses were not entirely clear on this record, but he did not participate alone. And in the years since that time, he had had no offenses for many years before the current spout, before 2003 when the triggering offense did occur, and the prior robberies really had no connection at all to the domestic violence issue that arose in 2003. Would your argument be different if the sentences had been made concurrent? Well. He had simply been sentenced concurrently four times, 25 years to life. So since it would be 25 years instead of 100. Well, certainly that would be closer to a proportionate sentence than 100 years to life. 100 years to life is, for all intents and purposes, a life without parole sentence, which is really as harsh as it could get, sort of a death sentence. So, yes, the argument could be different if the sentence were 25 years to life. Now, although in the case of Ramirez, a 25-year-to-life sentence was held to be grossly disproportionate under similar circumstances with a similar prior criminal history. So even if that had been the case, I think the sentence would still be grossly disproportionate. Do we have a problem here with a procedural bar? I don't think the Eighth Amendment claim was raised before the trial court. Well, it was, actually, Your Honor. And I do not think we have a procedural default here for that reason. Actually, in the Romero, in the defense counsel's Romero motion, which he made to the state court, the Romero motion is a state court motion asking that the court strike the prior so that he's not subject to the three-strikes law. And in the context of that motion, the defense lawyer did expressly raise it. Well, did he specifically raise an Eighth Amendment claim? He did cite the Eighth Amendment in the context of the Romero motion said, you know, this is necessary to protect the defendant's guarantee against cruel and unusual punishment under the Eighth Amendment, and that is at Excerpt of Record, page 85. Admittedly, it wasn't the central focus of the motion. The motion was brought under People v. Romero, but Romero itself is based on balancing the defendant's constitutional right against cruel and unusual punishment against the State's interest in public safety. So by making the Romero motion, and really the Romero motion raised all the same sort of proportionality arguments that an Eighth Amendment challenge would raise. Actually, the Romero motion is in, quote, in the furtherance of justice, is one of those wonderful phrases which gives great flexibility to the trial court. But I have it here. The Romero motion was filed December 10, 2004. Could you, following up on what Judge Cragerson said, could you point out to me where there's any mention of the Eighth Amendment or disproportionality? Yes, Your Honor. The mention of the Eighth Amendment is on page 85 of the Excerpt of Record. And there, the defense counsel, and this is in the Romero motion, the defense counsel pointed out that the trial court should balance the defendant's constitutional rights. Page 7 of the motion lines 4, disproportionate punishment under the Eighth Amendment. Right. Right. So it is mentioned in the motion. It's not, you know, like I said, it's not a huge focus of the motion, except to the extent that the motion itself does raise the same issues of proportionality. And although it is true the Romero motion provides more discretion to the State court than the Eighth Amendment, than an Eighth Amendment analysis would, the fact that it's a broader motion, I mean, just explains why, of course, the defense counsel would bring the motion under Romero, but it really encompasses the same analysis as an Eighth Amendment challenge would. In other words, if the defense lawyer is not going to prevail under the more lenient Romero standard, then presumably he would not have a separate opinion. Refresh my recollection. What does Article I, Section 17 of the California Constitution say? More or less the same thing as the Eighth Amendment? Yes, I believe so, except that the under the case law, actually the State constitutional protection does not require the State, the State cruel and unusual punishment analysis, at least as cited in the California Court of Appeals decision, did not require it to go through the inter-case proportionality analysis that Federal constitutional, Federal Eighth Amendment analysis does. There's no development in the Romero motion as to why the specific consecutive sentences violate cruel and unusual punishment. The question is, does it mention a disproportionate punishment in the Eighth Amendment talking about another case, Williams case? The Williams case. Right. Except that the whole motion, I mean, if you read through the whole Romero motion, I mean, the focus of the motion is the excessiveness of the sentence under the circumstances. Under Romero. Right. Under a more flexible rule in the Eighth Amendment. Under a more flexible rule, true. But the same basic arguments, you know, even though the standard might be different, the arguments are essentially the same, his sentence of the sentence imposed here or about to be imposed in the case of the Romero motion would be excessive compared to in relative, in view of the circumstances of his offense and his history and relative to other sentences. So the essence of the argument was made in the Romero motion and presented to the Court. Secondly, the contemporary and subjection rule to be a procedural bar would have to be both clearly and expressly relied upon by the state court. And now that they did cite that rule, they did immediately then move into the merits, so it's really not clear from what they said whether that was an independent and adequate ground, state ground for denying it or whether they were in fact deciding it on the federal rule, federal grounds. And secondly, it needs to be an act to put the procedural bar to be adequate to bar federal habeas relief. It has to be clear consistently and well, consistently applied and well established under state law. So the debate that we're having about, well, was it adequate about, you know, whether defense counsel's Eighth Amendment argument here was adequately preserved is one that is not clear under California law. There are many California cases that do go on and, you know, hold that an objection is sufficient, even if not, you know, perfectly raised, even if not fleshed out in great detail in the trial court. There are many cases where the California Court of Appeal will consider the issue on the merits. And so under Melendez v. Plyler, the contemporaneous objection rule is not so consistently or clearly applied here that it can justify barring federal habeas relief. I'd like to just go back very briefly on to the merits of the issue on the gross disproportionality issue and point out the inference of gross disproportionality here, just as in Ramirez, which involved even a 25-year sentence, is obvious. Mr. Parish's triggering offense was particularly troubling in that this domestic violence dispute, the circumstances of it were highly questionable. The only testimony under oath at trial did not – was not that Mr. Parish, in fact, intentionally struck the victim. She herself testified, actually at the preliminary hearing, which was read into the record, that he was flailing about in kind of a fit based on his hepatitis C medications, and she was trying to restrain him. So this was pretty – this aberration of conduct, which she described, was based on his mental state and his medication state at that point in time. And the only evidence that he was – he intentionally struck her was based on hearsay testimony from the officer, which the victim herself – the statements that they were based upon, the victim herself recounted. And the victim herself did not believe that Mr. Parish deserved to do 25 – even 25 years, even a 25-year sentence. She, in fact, believed that the two years that he had already served in custody at that time was sufficient. So if the victim herself believed that was sufficient, it's hard to see how a 100-year sentence could possibly be proportionate to the crime. And I think I've already addressed briefly the criminal history, but again, this was – the criminal history that this was based on makes him far from a garden variety free striker who normally has many more felony convictions, often very violent, hard and criminal. This is a man who had two very old robbery convictions before his triggering offense. So under the inference of gross disproportionality as well as interjurisdictional and inter-jurisdictional. Kennedy. How old was Mr. Parish when he committed his first armed robbery? He was in his 20s, in his early 20s. I would like to reserve my remaining time. I've got two minutes left. If I could reserve those remaining two minutes for rebuttal. Thank you. Thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Guillen. I'm the California Deputy Attorney General here on behalf of Respondent. I'd like to begin by addressing the procedural default. My opponent says that it was not clear that the State court actually applied procedural default. The district court saw it as clear. I think this Court should see this clear as well. That is, the court of appeals said Mr. Parish had not preserved an Eighth Amendment claim because he had not made an objection on that ground in the trial court, had not alerted the trial court to the fact that he believed his sentence, a three-strike sentence, would violate the Eighth Amendment. How do you take the words that we've discussed at page 7, line 3 of the Romero motion? The reference in the Romero motion is to — it's a quote from People v. Williams. Williams is a straight — No, no, no. The quote from Williams comes after that. But I think it's referring to Romero analysis. In Romero, the California Supreme Court said that — made clear that in three-strike cases, a trial court judge could dismiss strikes in the interest of justice. That had been open to that point. Williams followed shortly after Romero, and in Williams they said, while it can happen, a trial court's discretion is limited and is required to sort of express why the court believes that this particular defendant falls outside what was intended by three-strikes legislation. So I don't see that that reference in a motion that refers only to Romero and that is dealing with California case law only addressed in Penal Code Section 1385 alerted the court to what could easily have been said. That is, if you impose a three-strike sentence in this case, it will violate the Eighth Amendment. A sort of allusion to balancing and generalized consideration has not alerted the court to the nature of the — to the nature of the objection that is in a way that should or can preserve it for analysis in the court of appeal. So what we have here is just a kind of a passing inferential allusion to the Eighth Amendment. Yes, sir, Your Honor. In my discussion, I think, with colleagues in preparation for argument this morning, I think the term I used was drive-by. And that's sort of what we had, was a drive-by reference. Do you see any difference between the Romero standard of infuriance of justice and disproportionality under the Eighth Amendment? If so, what's the difference?  All right. One is a constitutional command that says you may not do this. The Constitution forbids sentences that are grossly disproportionate. And while we don't know precisely what that means, the contours are not well developed. That constitutional principle has been preserved. A Romero motion is addressed purely to the discretion of the trial court judge. Well, to the trial court's discretion. That is, so a trial court judge could believe. But it also had a constitutional basis, at least California constitutional basis, saying that these decisions could not be taken away from the judicial department. Yes. But it is that portion is constitutional. But the California cruel and unusual provision is not really the basis of it. That existed before Romero and Williams in Dillon and Lynch. So you think that it takes less to grant a Romero motion than it takes to grant an Eighth Amendment motion? A good deal less, yes, Your Honor. Has anybody ever compared the two? I haven't seen it. Like in the case? I haven't seen a ñ I'm unfamiliar with a published case that makes that comparison. But in my practice, I am familiar with the granting of Romero motions regularly by trial courts, over the last several years, granting Romero motions in three-strikes cases, when it's clear that the defendant is outside the intention of the legislature and the people in granting it or in enacting three-strikes law. So it's a lot easier to get a Romero motion granted than it is to get an Eighth Amendment motion granted? Yes, Your Honor, in my experience. So what do you think the counsel that made the Romero motion was telling the court at page 7? It was saying that this ñ that I believe you have authority under penal code section, under the penal code section and under Romero and Williams to grant the motion. I'm not telling you that I think it would be unlawful to impose the sentence that appears to be required under the California penal code. Doesn't this motion tell the trial court that it should weigh the individual's Eighth Amendment rights, including disproportionate punishment? I think it suggests that that is a factor. That is that the seriousness of the punishment is a factor in the trial court. Well, the actual line reads, the Supreme Court suggests that the trial court should balance the defendant's constitutional rights, which include the guarantees against disproportionate punishment of the Eighth Amendment to the United States Constitution. And you say that's not enough. I think that's not enough. Your Honor, if that were enough, then there would be no need for a Romero motion. That is, the argument would simply be in each case that the proposed punishment, the prescribed punishment under the penal code violates the Eighth Amendment. The argument centering on Romero is alerting the trial court to the fact that it has greater discretion, that is, in a case where it does not believe there's an Eighth Amendment violation, it still may, except from the severe punishment of the three-strikes law, an individual defendant. But if the Romero motion is successful, it's not a three-strikes case, right? Correct. So the individual is saying, consider the Eighth Amendment and disproportionate punishment specifically under the Eighth Amendment and don't subject me to three-strikes. I think, I believe that the reference to proportionality. I know what you think about the reference. But isn't that a fair statement of what the individual was asking in the Romero? He's asking, take into consideration the Eighth Amendment and its prohibitions against disproportionate punishment and grant my Romero motion so I'm not subject to three-strikes. I don't dispute what you said there. That is, take into consideration that we have a history and a jurisprudence that considers the seriousness of punishments. And that's embodied in the Eighth Amendment. But I believe that the reference is simply to a generalized principle and says that in the exercise of your discretion, we are asking for leniency. We are asking for you to accept out of the statute someone whose punishment would not be prohibited by the Eighth Amendment, but who you might decide doesn't fit within the statutory scheme. I take it Mr. Parrish was represented by counsel at trial? Yes, Your Honor. And the Romero motion, I take it, was denied? Correct, Your Honor. Was there an opportunity for counsel to specifically raise prior to sentencing an Eighth Amendment claim? Of course, Your Honor. And how is that typically done in California procedure once a Romero motion is denied? I don't know that I'd say it's typically done, but it's typically argued simply straightforward. To impose an Eighth Amendment or to impose a three-strike sentence in a case of this nature would violate the Eighth Amendment and its gross disproportionality principle as set forth in the United States Supreme Court's cases beginning with Romero. So it would have been enough to orally articulate it at sentencing? Yes, Your Honor. Please don't impose 25 to life times 4 because that would violate the Eighth Amendment. I think the please wouldn't be required if the constitutional protection is there. Okay. It's not required to say please, just say you cannot do it. Okay. Was that done here? In California courts? Was that done in this case? Absolutely not, Your Honor. There was never, and that's why the Court of Appeals said no Eighth Amendment claim was preserved for appeal because Mr. Parrish's counsel never said this would be an unlawful sentence, 25 years to life or 100 years to life. As it went up the line, was the Eighth Amendment argument specifically made? Yes, Your Honor. In his appellant's opening brief when the case was automatically appealed to the California Court of Appeal, he argued that there was a violation. He argued that the Romero motion should have been granted but argued as well that the violation violated both the California constitutional principles against cruel and unusual punishment and the Eighth Amendment principles. If I might make just a couple of other points with regard to proportionality. Well, one, I think, point is quite important, and that is Mr. Parrish says that the California court's decision was contrary to established precedent of the United States Supreme Court. And as I understand that argument, it's because the California Court of Appeal, although it did refer expressly to the most recent and most applicable Supreme Court decision viewing, didn't use the words gross disproportionality principle. We know from cases like Early v. Packard that a state court doesn't even have to cite to a Supreme Court precedent for the AEDPA standard to apply. So a Petitioner has to, but the state courts don't. Is that where we are? Well, yes. I think to a certain extent that's correct. A Petitioner's pleadings, well, I don't think a Petitioner has to say. I think a Petitioner in Federal court could say simply, my sentence was cruel and unusual. And the Federal court is required to liberally construe the pleadings of a pro se Petitioner, and he would have adequately stated his claim. Now, he may not have adequately exhausted that claim by fairly presenting that in a state court. But I think while in the abstract a state court doesn't even have to cite or at least arguably be aware of the governing constitutional principle, in this case they clearly were by referring to Ewing. And as the district court, Magistrate Judge Nakazato said, the district court or the California court relying on Ewing concluded that there was no inference of gross disproportionality. We believe that's a correct interpretation, and the California court approached it correctly. So 2254 does apply. Then with regard to Mr. Parrish, I have a couple of points as well. One is that he was not convicted of any crime. The other is that he was not convicted of any crime. And so the suggestion is that his strike convictions were old, and he had not had a large number of convictions since those strike convictions until the current crime. I'm struck by one conviction that maybe you can explain to me. He got 25 years consecutive for damaging a telephone. How does that show that he is not repaired from his 1985 and 1989 crimes? Why should he get 25 years for damaging a telephone? If that was his only crime, I'm confident that he would not have gotten 25 years. And so do you stipulate that 100 years can be reduced to 75 years? Would I stipulate to that? I don't know what lawful basis there would be for that. If I were the trial judge, if I were the trial judge, I think I would have approached this case somewhat differently, and I suspect that I would have assigned a sentence of 25 years to life. The trial judge has the authority under California law to dismiss strike allegations as to individual counts. This trial judge was not asked to. But what is clear in this case is that we have a man with a history of violence and danger. In 1985, when he was born in 1965, according to the probation report, in 1985, he committed an armed robbery with a gun, and he had the gun. He went to prison for three years. In 1989, he committed what appeared to be a fairly sophisticated armed robbery and beating with a knife, and he was sentenced to 13 years in prison for that crime. Not too long after leaving prison for that crime, as we know from the court of appeal decision, he hit Anna Keener in the head with a bag full of beer bottles and injured her and went to trial for that. And the trial judge didn't sentence him to a three-strike sentence in January 2003. Instead, the trial judge exercised his authority under California Penal Code Section 17B to reduce that to a misdemeanor. So in January 2003, Mr. Parrish had been given a great deal of leniency. A couple of months later, when Miss Keener challenges him, makes the mistake of challenging him for what must be described at the very least as inappropriate behavior with his daughter, he reacts by beating her up. And this trial judge examined that and said, Mr. Parrish, you have qualified yourself finally for sentencing as a three-striker. I will sentence you under the law, and we will incapacitate you from committing crimes in the public for a very long time. Did Miss Keener's daughter, Jessica, testify? Jessica also. Did she testify at the trial? Yes, she testified and denied what she had told the police officer before. In a circumstance that's all too frequent in severe domestic violence cases. But we also know that Mr. Parrish had not too long ago attacked her with a large cooking fork, is the way I interpret it. A cooking fork is the way it's described in the probation report. These women had good cause to be concerned about him. He was convicted of dissuading a witness. He had a life history of dangerous, violent crimes. And as Justice O'Connor said in Ewing, the State of California can choose to incapacitate such people. That's what's happened with Mr. Parrish. If the Court has no other questions, thank you very much. But the three consecutive 25-year sentences, that would also do the job. Well, that wasn't a choice. The trial court had the sentence consistent with the law, and the law provided the choice of 25 years to life, but not a term of years of 25 years in those circumstances. If I understood your comment, Your Honor. No, my comment was that three consecutive 25 years to life would have put him away for the rest of his life. Yes, Your Honor. Indeed, probably one would have. I think he was 45. That would have made him 70. Some folks are fortunate to live a good deal longer and have active lives, but not all. And quite frankly, California continues to examine three-strike sentences and may well adjust that in the future. I don't think California will. Is this sentence subject to no parole? It's subject to parole, but only after he's served the minimum. So I believe it is accurate, as my opposing counsel has described. I think he is not eligible for parole until he has served each of those 25-year terms. So in 100 years? Right, he'll be 140. So it probably is the, if unchanged, and it may well be changed. As you know, California, the legislature and other people regularly look at three-strikes. There may not be much sense in incapacitating people who no longer are dangerous, but I believe that's a matter for the people of California to decide. Thank you very much. Thank you. The matter is submitted. She had a minute. Oh, excuse me. Sorry. I'd like to hit on a few of the points that government counsel has made. On the procedural default issue, I did want to point out that the constitutional point was raised at one other point in the Romero motion. That's at page 80 of the Executive Record, page 2 of the motion. And there the defense counsel talks about the guidance provided in Romero and says several general principles emerge. Paramount among them is the rule that the language of Section 1385, in furtherance of justice, requires consideration both of the constitutional rights of the defendant and the interests of society represented by the people in determining whether there should be a dismissal. So that, as well as the other reference that we discussed before, do indicate that the constitutional issue, the Eighth Amendment issue, is part of the Romero analysis, and that was pointed out to the court. I think maybe more broadly, stepping back from it a little bit, this is not a situation where this is some brand-new issue that is being raised for the first time either on appeal or in a Federal habeas petition, which often does happen. This is a situation where the issue was essentially raised before the trial court, and it was really a question of, you know, how clear was defense counsel in briefing the issue. And I think it would be very inappropriate to deprive Mr. Parrish of the opportunity for Federal habeas review based on, you know, possibly some inartfulness by his defense counsel at the time. Fundamentally, this question of the excessiveness of his sentence was presented to the State courts and was ruled upon. As to the ñ well, I think I'll wrap up at this point. I don't have time for that. So unless the Court has further questions, I'll just ask that the judgment be reversed. Are you CJA? Yes. Thank you. Sure. I thank both of you. You both did a really good job on the briefs and the argument. And do you know who you remind me of? I don't. Shirley Hustedler. Oh, is that right? Well, I'll take that as an extreme compliment. Thank you. All right. The matter is submitted. And we'll take up Charles Andrew Williams v. Stuart Bryant. Thank you.
judges: Pregerson, Hawkins, Bea